### HENRY COWELL LIME & CEMENT CO. v. GLOBE NAVIGATION CO., Limited.

#### (Circuit Court of Appeals, Ninth Circuit. October 2, 1905.)

#### No. 1,170.

SHIPPING—CONTRACT OF AFFREIGHTMENT.

A contract between the consignee of a shipment of lime and the carrier construed, and *held* to be one for the payment of a bonus above the freight, and not to have been discharged by the payment of the freight at the usual rate by the consignor and its acceptance by the carrier.

Appeal from the District Court of the United States for the Northern District of California.

The appellee was the libelant in the court below, and in its libel alleged that on or about May 1, 1903, it entered into an agreement with the appellant at San Francisco, whereby it agreed to transport to the port of San Francisco from Roche Harbor, in Puget Sound, 15,000 barrels of lime, in consideration of which the appellant agreed to pay, in addition to the freight rate which theretofore prevailed between the parties, a bonus of 5 cents per barrel. The libel proceeded to allege performance of the contract by the appellee by means of its steamship Tampico. The answer of the appellant denied that the contract was made with reference to the steamship Tampico, but alleged that it was made with reference to a particular vessel only, to wit, the

steamship Eureka, and upon the condition that the loading of the lime should commence between the 7th and 10th days of May, and that the lime was not transported by said steamship, nor was said steamship at Roche Harbor ready for loading between the 7th and 10th days of May. For a second defense, the appellant alleged that on or about the 14th day of May, 1903, the appellee made a contract with the Tacoma & Roche Harbor Lime Company, the consignor of the lime, at Roche Harbor, for the transportation of the lime by the Tampico at a freight rate of 30 cents per barrel and no more, and that said corporation paid the appellee said agreed freight rate. On these issues testimony was taken, and thereupon the District Court found for the appellee for the full amount sued for.

Olney & Olney, for appellant.
Charles Page, Samuel Knight, and W. S. Burnett, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case, delivered the opinion of the court.

For some time prior to the transactions out of which the suit arose, the appellant, a corporation of the state of California, had business dealings with the Tacoma & Roche Harbor Lime Company, a corporation of the state of Washington, from which it purchased lime, with an understanding that, if the freight exceeded 30 cents per barrel from Roche Harbor to San Francisco, the excess was to be charged back to the consignor. The appellee was a corporation having its principal office at Seattle and an agent at San Francisco. It owned and operated three steamers, the Eureka, the Meteor, and the Tampico, all of the same general type, speed, and carrying capacity. It had transported a number of shipments of lime for the appellant. In April, 1903, through its agent in San Francisco, Mr. Rochester, negotiations with the appellant were opened for the transportation of 15,000 barrels of lime. The carrying capacity of the steamers was considerably greater than 15,000 barrels of lime, and to complete a cargo it was necessary to carry other merchandise. About May 1st Mr. Rochester secured a booking of a quantity of coal, to be loaded on the Meteor at Tacoma. He arranged with Mr. George, manager of the appellant, for the transportation of the lime in conjunction with the coal cargo. The contract is shown by a letter written to the appellant on May 4, 1903, by Mr. Rochester on behalf of the appellee, which contained the following:

"Gentlemen: As per our conversation with Mr. George on the first instant, we wired our Seattle office as follows: 'Cowell will pay 5 cents per barrel bonus on lime. This must be kept secret from McMillin. Cowell requests answer by telegram.' To this we receive a reply on the 2d: 'Will accept your offer Cowell, providing this is clearly understood. Barring contingencies loading commencing between May 7th and May 10th. Lime following as soon as possible after other cargo is loaded.' After consulting with your Mr. George, over the long distance line from Santa Cruz this morning, we have telegraphed Seattle as follows: 'Cowell's manager George telephones from Santa Cruz confirming proposition as per your telegram of 2d, requests you notify McMillin immediately, also requests making loading earliest date possible.' "

On May 7, 1903, the lime company telegraphed to the appellee at San Francisco as follows:

"Eureka will be here today. Avoid discussion rate there. That question settled here."

To which the appellant answered on May 8th:

"We beg to advise you that we have already closed at 35-cent freight rate. On the 11th of April you wired us that her rate was 30 cents, but to make the best rate possible. We had the matter up with Mr. Rochester, and in order to get him to send her at all we had to make a 35-cent rate; otherwise, he would not send her."

On May 7th, the lime company wrote the appellant:

"We have definitely engaged the Meteor to take the cargo of 15,000 barrels of lime to you, and they promised she would be here today. * * * We trust that you have not considered the question of rate with Mr. Rochester, as we are handling that question here with the owners of the vessel."

To this the appellant answered on May 11th:

"We note that it is definitely arranged for the Meteor to take 15,000 barrels, and we trust that you will wire us when she sails, which we hope will be soon. We did make the rate here with Mr. Rochester as already advised you, but we simply would not agree to take the cargo unless at that rate: and after ten days' delay, while he tried to secure other cargo, we concluded that it was better to pay that much extra, get the lime here, dispose of it. and be ready for another lot."

This correspondence effectually disposes of the contention of the appellant that the contract to pay the bonus of 5 cents per barrel applied only to the Eureka. Mr. Rochester in his testimony denied that the contract was made with reference to any particular steamer, and testified that about the 20th of April the Eureka had been taken off the line to be sent to Alaska. The correspondence above quoted shows that the appellant's agent understood that the contract to pay the bonus was not affected by the fact that the shipment was to be made on the Meteor, instead of the Eureka.

The principal question in the case is whether or not the contract so made to pay a bonus of 5 cents per barrel was canceled by the arrangement which was made between the lime company and the appellee in regard to the freight rate and the prepayment of the freight by the former. There was no further discussion between Mr. George and Mr. Rochester, the respective agents of the appellee and the appellant, in regard to the freight rate or the bonus, until after the ship arrived at San Francisco with her cargo. The Meteor had been found to be in a disabled condition, and the Tampico had been substituted in her place. The Tampico began her coaling at Tacoma on May 13th, and began loading the lime at Roche Harbor on the 15th. She completed loading her cargo there on the 17th, and on the following day sailed for San Francisco. In the meantime, on the morning of the 12th, Mr. Rochester telephoned to Mr. George that he had received notice that the Tampico had been substituted for the Meteor, and would sail from Tacoma on the 13th. In answer to this Mr. George made no objection, nor was anything said in regard to the bonus. On the 23d the Tampico arrived at San Francisco, and the appellee's agent presented to the appellant a bill for the bonus of 5 cents per barrel. Payment was refused on the ground that the freight had been paid at Roche Harbor. The correspondence which followed between the lime company and the appellant shows the

circumstances and the understanding under which the freight was paid at Roche Harbor.   The lime company wrote to the appellant on June 2d:

"As we have written to you a number of times, the agreed rate of freight with the Globe Navigation Company was 30 cents per barrel.   That was prepaid, and we have our receipt for same.   This freight matter we handled exclusively with that company direct, and there can be no possible misunderstanding about it.   They informed us, however, as we wrote you, that you had offered a special inducement of 5 cents per barrel to Mr. Rochester as a private matter between you and him on that cargo.   We simply declined to discuss that question, referring it to you entirely, as we knew nothing about it."

It is clear from the correspondence that the lime company, in prepaying the usual freight rate of the lime, did so to protect itself.   Under its arrangement with the appellant, if the freight rate exceeded 30 cents per barrel, the excess was to be charged back to the lime company.   The lime company had received the information that a special rate had been agreed upon in San Francisco.   It was evidently apprehensive that that arrangement might result in a charge against it.   It was unwilling to assume any liability in regard to the bonus which it was informed had been exacted by Mr. Rochester.   It left the parties to that agreement to adjust the liability thereunder, if any there were.   The contract involved in this suit had nothing to do with the freight rate.   Nothing was said in it about the freight rate.   It was purely and simply a contract for a bonus in addition to the freight rate.   It was the freight rate alone that was paid by the lime company at Seattle.   How can it be said that the prepayment of the usual freight, and its receipt by the appellee, canceled or affected the original contract for a bonus of 5 cents per barrel or discharged the appellant of its liability therefor.   It is true that as early as May 7th, the lime company wired the appellant to avoid discussion of the freight rate, and said that that question would be settled at Roche Harbor.   But nothing was done in pursuance of that notice.   No readjustment of the bonus contract was made at San Francisco, nor was there any repudiation of the agreement to pay the bonus. On the contrary, the appellant answered, informing the lime company that it had already closed the contract at 35-cent freight rate, and that in order to get the cargo sent at all it had to make that rate.   It is true that in its communication the extra 5 cents was added to the freight rate, and was not referred to as a bonus; but the reason for this would seem to have been that at that time the appellant expected the lime company to assume liability for the extra 5 cents as part of the freight rate.

Nor is the appellant relieved of its liability under the contract by the fact that the loading of the lime did not begin between May 7th and May 10th.   The proviso in the contract was that:

"Barring contingencies, loading commencing between May 7th and May 10th, Lime following as soon as possible after other cargo is loaded."

This means that the loading of the other cargo was to begin between May 7th and May 10th, and the loading of the lime as soon as possible thereafter, all subject, however, to contingencies that might cause delay.   Such contingencies arose.   The Meteor was found to be unseaworthy, and was by the inspectors ordered upon the dry dock, so that

the loading of the cargo began on May 13th and the loading of the lime began on May 15th. But on the 12th the appellant received notice that the loading of the coal would not begin until the 13th and made no objection to the delay. When the appellant was asked for payment of the 5 cents per barrel bonus, liability was denied, not on the ground that the shipment had not been made upon the Eureka, nor upon the ground of the delay in beginning loading, but upon the ground only that the freight had been prepaid at Roche Harbor.

We find no error in the decree of the District Court, and it is accordingly affirmed.